# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

ROBERT WILLIAMSON,
      Plaintiff,

       vs.


COMMISSIONER OF
SOCIAL SECURITY,
      Defendant.

Case No. 1:11-cv-828
Barrett, J.
Litkovitz, M.J.


**REPORT AND
RECOMMENDATION**


Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications

for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is

before the Court on plaintiff's Statement of Errors (Doc. 12) and the Commissioner's response in

opposition. (Doc. 13).

## I. Procedural Background

Plaintiff filed applications for DIB and SSI in January 2009, alleging disability since

December 15, 2008, due to epilepsy, chronic gout, and mental problems. Plaintiff's applications

were denied initially and upon reconsideration. Plaintiff, through counsel, requested and was

granted a de novo hearing before Administrative Law Judge (ALJ) Carol K. Bowen. Plaintiff

and a vocational expert (VE) appeared and testified at the ALJ hearing. On March 25, 2011, the

ALJ issued a decision denying plaintiff's DIB and SSI applications. Plaintiff's request for review

by the Appeals Council was denied, making the decision of the ALJ the final administrative

decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI).  The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.  If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a) (4)(i)-(v), 404.1520(b)-(g)).  The claimant has the burden of proof at the first four steps of the sequential evaluation process.  *Id.*; *Wilson* v. *Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir.

2004). Once the claimant establishes a prima facie case by showing an inability to perform the

relevant previous employment, the burden shifts to the Commissioner to show that the claimant

can perform other substantial gainful employment and that such employment exists in the

national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir.

1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act
> through March 31, 2013.

> 2. The [plaintiff] has not engaged in substantial gainful activity since December
> 15, 2008, the alleged onset date (20 C.F.R. 404.1571 *et seq.*, and 416.971 *et seq.*).

> 3. The [plaintiff] has the following severe impairments: idiopathic generalized
> epilepsy; obesity; gout; history of arthroscopic left knee surgery; history of left
> thumb fracture; left shoulder rotator cuff tendonitis, impingement syndrome, and
> acromioclavicular joint arthropathy; learning disorder; cognitive disorder, not
> otherwise specified; mood disorder; impulse control disorder; alcohol abuse;
> history of ADHD; and oppositional defiant disorder (20 C.F.R. 404.1520(c) and
> 416.920(c)).

> 4. The [plaintiff] does not have an impairment or combination of impairments that
> meets or medically equals one of the listed impairments in 20 C.F.R. Part 404,
> Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d),
> 416.925 and 416.926).

> 5. After careful consideration of the entire record, the [ALJ] finds that the
> [plaintiff] has the residual functional capacity to perform medium work as defined
> in 20 CFR 404.1567(c) and 416.967(c) except that he can never operate foot
> controls or climb ladders, ropes, or scaffolds. He can only occasionally kneel,
> crouch, or crawl. He can perform overhead reaching with the left arm only
> occasionally, and he can reach in all other directions with the left arm no more
> than frequently. He can tolerate no exposure to hazardous machinery, unprotected
> heights, or driving as part of the job duties. He can perform no forceful gripping
> with the left hand. He is limited to no complex tasks, no more than occasional

3

changes in work setting, no production rate pace, tasks involving only simple math calculations, and no more than superficial interaction with others.

6. The [plaintiff] is unable to perform any past relevant work (20 C.F.R. 404.1565 and 416.965).[3]

7. The [plaintiff] was born [in]... 1979 and was 29 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and  416.963).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the  [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from December 15, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 14-26).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. §

405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by

substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v.*

*Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.,*

478 F.3d 742, 745-46 (6th Cir. 2007).

---

[3]Plaintiff's past relevant work was as a short order cook.  (Tr. 160).

4

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007)). *See also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545–46 (6th Cir. 2004) (reversal required even though ALJ' s decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Error

On appeal, plaintiff raises one assignment of error: the ALJ erred in her assessment of the opinions of plaintiff's treating psychiatrist, Joseph Cresci, M.D., and treating neurologist, Michael Privitera, M.D., in violation of 20 C.F.R. §§ 404.1527(c) and 416.927(c)[1] and Social Security Ruling 96-2p (1996). Plaintiff contends that the ALJ's determination to give greater

---

[1] 20 C.F.R. §§ 404.1527 and 416.927 were amended effective March 26, 2012. The provisions governing

weight to the state agency reviewing psychologists than to Dr. Cresci was in error as they did not have an opportunity to review Dr. Cresci's full medical records prior to tendering their opinions. Further, plaintiff asserts the ALJ erred by not evaluating Dr. Cresci's opinion using the requisite factors under 20 C.F.R. §§ 404.1527(c) and 416.927(c). As to the ALJ's assessment of Dr. Privitera's opinion, plaintiff claims the ALJ erroneously determined that this opinion was unsupported as the record evidence includes objective evidence of plaintiff's attention, memory, and concentration difficulties.

In her decision, the ALJ assigned "little weight" to the opinions of Dr. Cresci and Dr. Privitera. The ALJ noted that Dr. Cresci's opinion was deemed "not well supported" by objective evidence by the state agency reviewing psychologists. Further, the ALJ found that Dr. Cresci had treated plaintiff infrequently since 1993 and that his post-disability onset date treatment notes consisted primarily of plaintiff's subjective reports and contained few, if any, objective findings. The ALJ also noted that Dr. Cresci's July 2010 records included his notation that plaintiff was much improved, which was inconsistent with his opinion that plaintiff's mental impairments precluded his ability to engage in full time employment. As for Dr. Privitera, the ALJ assigned his opinion little weight because it was: (1) unsupported by objective findings; (2) based on infrequent treatment; and (3) inconsistent with Dr. Privitera's treatment notes. For the following reasons, the ALJ's determination to afford "little weight" to these opinions is supported by substantial evidence.

"In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525,

---

the weight to be afforded a medical opinion were previously found at §§ 404.1527(d) and 416.927(d).

529-30 (6th Cir. 1997). Likewise, a treating physician's opinion is entitled to weight substantially greater than that of a non-examining medical advisor. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Lashley v. Sec'y of H.H.S.,* 708 F.2d 1048, 1054 (6th Cir. 1983). The weight given a treating physician's opinion on the nature and severity of impairments depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 404.1527(c); *Harris*, 756 F.2d 431 (6th Cir. 1985). If a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight. 20 C.F.R. § 404.1527(c)(2); *see also Walters*, 127 F.3d at 530. If not contradicted by any substantial evidence, a treating physician's medical opinions and diagnoses are afforded complete deference. *Harris*, 756 F.2d at 435. *See also Cohen v. Sec'y of H.H.S.*, 964 F.2d 524, 528 (6th Cir. 1992). The opinion of a non-examining physician is entitled to little weight if it is contrary to the opinion of the claimant's treating physicians. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). If the ALJ rejects a treating physician's opinion, the ALJ's decision must be supported by a sufficient basis which is set forth in his decision. *Walters*, 127 F.3d at 529; *Shelman*, 821 F.2d at 321.

If the ALJ does not give the treating source's opinion controlling weight, then the ALJ must consider a number of factors when deciding what weight to give the treating source's opinion. 20 C.F.R. § 404.1527(c). These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. § 404.1527(c)(2)(i)(ii); *Wilson,* 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source,

7

how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(3)-(6); *Wilson,* 378 F.3d at 544. The ALJ must likewise apply the factors set forth in § 404.1527(c)(3)-(6) when considering the weight to give a medical opinion rendered by a non-treating source. 20 C.F.R. § 404.1527(c). When considering the medical specialty of a source, the ALJ must generally give "more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(c)(5).

Here, the ALJ gave "little weight" to Dr. Cresci's September 5, 2009 opinion that plaintiff is unable to maintain employment due to poor attendance and volatility toward co-workers (Tr. 333-35) because it was not supported by objective evidence, was unsubstantiated by Dr. Cresci's treatment notes, and appeared largely based on plaintiff's subjective complaints. (Tr. 23-24). The ALJ further noted that Dr. Cresci had seen plaintiff only "episodically" since 1993 and that his treatment notes dated after the onset disability date contained few, if any, objective findings supporting his opinion on plaintiff's employability. *Id.*

Although Dr. Cresci was plaintiff's treating psychiatrist, the ALJ was not required to afford more weight to his opinion due to the lack of clinical and objective medical evidence supporting the opinion. Aside from plaintiff's subjective reports, Dr. Cresci's treatment records contain scant objective or clinical evidence supporting his opinion that plaintiff's behavioral and/or mood disorders preclude his ability to work. Objective evidence in the psychiatric/psychological context includes "medical signs," 20 C.F.R. § 404.1512(b)(1), which are defined as "psychological abnormalities which can be observed, apart from your statements

8

(symptoms). . . . Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, *e.g.*, abnormalities of behavior, mood, thought, memory, orientation, development, or perception." 20 C.F.R. § 404.1528(b). Dr. Cresci's notes from 1993 to July 2010 primarily contain plaintiff's subjective reports of his general mental state and Dr. Cresci's prescriptions for Ritalin, Zoloft, Cylert, Tegretol, Ambien, Effexor, and Adderall. *See* Tr. 349-56, 371-74, 402, 409-412, 414, 503-19, 522-26, 529-45, 569-87. Although Dr. Cresci's files also include objective and clinical evidence from other sources, these reports predate Dr. Cresci's September 2009 opinion of disability by some 15 to 20 *years*. This evidence includes: (1) a 1989 grade school diagnostic evaluation completed by Kathleen Charvat, M.D., finding plaintiff functioned below average in some areas, at an average level in other areas, and within the normal range for adaptive functioning, and recommending that plaintiff be given individualized attention and assistance with school work and counseling to assist his behavior management skills (Tr. 416-23); (2) an abnormal electroencephalography (EEG) result from July 21, 1993 (Tr. 375); (3) a September 1993 psychological evaluation showing plaintiff functioned in the low average range of intelligence and exhibited immaturity, hostile withdrawal, and hyperactive behavior demonstrative of attention deficit hyperactivity disorder and anti-social behaviors, but was within the normal range of aggressive and delinquent behavior (Tr. 366-69); (4) a ninth-grade, October 1993 special education evaluation showing plaintiff exhibited average reading skills, low-average mathematic skills, and below average written skills and noting that plaintiff was cooperative but had difficulty concentrating (Tr. 357-66); (5) a December 1993 report from Dr. Charvat including her opinion that plaintiff had "confirmed behavioral and social adaptive delays, but showed cognitive and achievement abilities to be within the low normal

9

range," low normal adaptive functioning skills, and a "good" prognosis for continued learning (Tr. 378-84); and (6) a second abnormal EEG in 1995 demonstrating a seizure disorder. (Tr. 547-61). While it is not improper for a doctor to rely on tests and findings of other physicians, this evidence does not support Dr. Cresci's opinion that plaintiff's mental and mood impairments preclude his ability to work given the remoteness in time between these clinical and objective findings and Dr. Cresci's 2009 opinion. Therefore, this evidence provides little support for any contemporary opinion in the absence of more recent, consistent evidence. Consequently, to the extent that the ALJ gave "little weight" to Dr. Cresci's opinion due to its lack of supporting evidence, the decision is substantially reported by the record.

Moreover, as noted by the ALJ, Dr. Cresci's opinion was inconsistent with the more recent consultative evaluation performed by David Chiappone, Ph.D., and the opinions of state agency reviewing psychologists Caroline Lewin, Ph.D., and Kristen Haskins, Psy.D. Dr. Chiappone evaluated plaintiff in April 2009 (Tr. 246-51) and concluded that plaintiff was not impaired, or at most mildly impaired, in his abilities to understand simple one and two-step job instructions; to maintain attention and concentration; to relate to the public; and to carry out and persist in tasks over time. (Tr. 250). Dr. Chiappone also found that plaintiff was moderately impaired in his ability to relate to co-workers and had mildly impaired stress tolerance. *Id.* Subsequent to Dr. Chiappone's evaluation, Dr. Lewin completed a Mental Residual Functional Capacity Assessment and opined that while plaintiff was markedly limited in his ability to understand, remember and carry out *detailed* instructions and moderately limited in his abilities to accept instructions and get along with coworkers or respond appropriately to changes in the work setting, he nevertheless had no other limitations that would preclude work activity. (Tr.

10

274-75). Dr. Lewin's opinion was affirmed by Dr. Haskins, who also observed that Dr. Cresci had not provided clinical treatment notes or evaluations in support of his opinion that plaintiff was unemployable. (Tr. 347).

Plaintiff argues that the opinions of Dr. Lewin and Dr. Haskins should not be given greater weight than that of Dr. Cresci because they were based on an incomplete review of the record. Specifically, plaintiff asserts that Dr. Lewin's opinion was generated without review of any of Dr. Cresci's records and, further, that Dr. Haskins had only reviewed Dr. Cresci's September 2009 report. Plaintiff contends that because these opinions were rendered without the opportunity to review all of Dr. Cresci's notes, the ALJ erred by basing her decision to discount Dr. Cresci's opinion on them. The undersigned finds that, although the opinions of the state agency psychiatrists were formed without a complete review of Dr. Cresci's notes, the ALJ's decision is nevertheless substantially supported by the record.

There is no regulation or case law that requires the ALJ to reject an opinion simply because medical evidence is produced after the opinion is formed. Indeed, the regulations provide only that an ALJ should give more weight to an opinion that is consistent with the record as a whole. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). Unlike the agency reviewing psychologists, the ALJ had the opportunity to review the entire record, including all of Dr. Cresci's notes, and explained that she gave more weight to the opinions of Dr. Lewin and Dr. Haskins because they were "supported by objective signs and findings upon examination" while Dr. Cresci's were not. (Tr. 23, 24). That these psychologists did not have the opportunity to review all of Dr. Cresci's notes does not change the fact that his opinion was not supported by objective or clinical findings as discussed above.

11

Plaintiff also argues that the ALJ "failed to evaluate any of the factors set forth" in the applicable regulations. (Doc. 12 at 21). A review of the record, however, demonstrates that the ALJ properly considered the requisite factors under 20 C.F.R. §§ 404.1527(c) and 416.927(c) in deciding to give "little weight" to Dr. Cresci's opinion. The ALJ properly noted the subjective nature of Dr. Cresci's treatment records, the lack of substantiating objective evidence, and their internal inconsistency. *See* 20 C.F.R. § 404.1527(c); *Harris*, 756 F.2d 431 (6th Cir. 1985). The Court notes that even where the evidence arguably supports the conclusion the plaintiff seeks, the reviewing court must uphold the decision of the ALJ if the evidence could reasonably support the conclusions reached by the ALJ. *Her v. Comm'r v. Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). The undersigned concludes that the ALJ's determination to give "little weight" to Dr. Cresci's opinion is substantially supported by the record and should be affirmed.

The ALJ also assigned "little weight" to Dr. Privitera's June 2008 opinion that plaintiff was "incapacitated" and "unable to maintain full-time work due to a cognitive impairment." (Tr. 23, 321-22). The ALJ reasonably discounted this opinion based on the lack of objective findings to support Dr. Privitera's opinion, the infrequency of treatment by Dr. Privitera, and the inconsistency of the opinion with Dr. Privitera's own treatment notes. (Tr. 23).

The ALJ reasonably determined that Dr. Privitera's opinion of plaintiff's unemployability was not supported by objective evidence. Dr. Privitera ordered a prolonged EEG to determine if seizures were the underlying cause of plaintiff's concentration difficulties. However, the test results did not reveal any clear alteration of awareness or confusion by plaintiff and only supported the diagnosis of generalized epilepsy. (Tr. 606-08). Moreover, as discussed *supra*, the

12

clinical and mental status examination findings of Dr. Chiappone indicate that plaintiff has no

more than a mild impairment in his ability to understand simple instructions and to concentrate

and maintain attention. *See* Tr. 250.  Plaintiff has not pointed to any objective evidence

supporting Dr. Privitera's opinion in this regard.  Consequently, the ALJ's determination that Dr.

Privitera's opinion is not supported by objective findings is substantially supported.

　　　The ALJ also based her decision to discount Dr. Privitera's opinion on an infrequent

treatment relationship.  Dr. Privitera treated plaintiff annually for his seizures from 2004 to

January 2011.  (Tr. 243-45, 293-332, 495-502, 611-14).  A review of the record demonstrates

that Dr. Privitera treated plaintiff nine times over a seven year period as follows: (1) treatment for

poor sleep and excessive alcohol intake in August 2004 (Tr. 329-30); (2) post-seizure

examination in November 2005 (Tr. 317-20); (3) a January 2006 examination during which

plaintiff reported "big" improvement in concentration after decreasing Valproic Acid (Tr. 312-

14); (4) treatment for adverse effects from medication in May 2006 (Tr. 307-10); (5) an October

2006 examination where plaintiff reported working as a cook and sleep difficulties (Tr. 303-06);

(6) a November 2007 epilepsy evaluation (299-302); (7) an August 2008 examination during

which plaintiff reported "mild concentration problems" and was noted as being employed full-

time as a cook (Tr. 294-98); (8) a May 2010 examination where Dr. Privitera recommended that

plaintiff undergo a prolonged EEG to determine whether seizures could be contributing to

cognitive problems (Tr. 495-502); and (9) a January 2011 evaluation after which Dr. Privitera

noted that plaintiff had experienced a dramatic improvement in his mood and irritability, with no

mention of cognitive impairments. (Tr. 611).  In June 2008, Dr. Privitera opined that plaintiff

was unable to engage in full time employment due to a cognitive problem, but Dr. Privitera had

not seen plaintiff since November 2007, some seven months before he rendered this opinion. In addition, just two months after opining that plaintiff's cognitive problems rendered him unemployable, plaintiff reported only "mild concentration problems" and was employed as a full-time cook. (Tr. 294-95). As frequency of examination is a factor the ALJ may consider in weighing medical opinions, *see* 20 C.F.R. §§ 404.1527(c) and 416.927(c), the undersigned finds no error by the ALJ in this regard.

The ALJ also determined that Dr. Privitera's opinion was inconsistent with his own treatment notes. The ALJ stated that Dr. Privitera's May 2010 treatment notes included findings similar to those made in August 2008 when Dr. Privitera found that plaintiff had intact short and long term memory and no attention or concentration deficits. (Tr. 295-96). Plaintiff contends the ALJ erred in this regard and that contrary to the ALJ's assertion, the May 2010 treatment notes actually include findings that plaintiff had "concentration problems and speech problems; flunked out of Cincinnati State." (Doc. 12 at 22, citing Tr. 496). Given this notation, plaintiff argues that the ALJ's decision is not supported by the evidence and should be reversed. The undersigned disagrees.

The May 2010 treatment notes include the notation that plaintiff reported "concentration problems" and "flunking" out of Cincinnati State as adverse effects of his seizures. (Tr. 496). Yet, a review of these records demonstrates that these were plaintiff's subjective reports and not, as plaintiff asserts, Dr. Privitera's observations. Rather, Dr. Privitera reported no attention or concentration deficits (plaintiff's attention and concentration were reported as "awake and alert") and that plaintiff's short and long term memory were intact on neurological examination. (Tr. 499). The ALJ correctly noted in her opinion that these findings mirrored those in August 2008,

14

with the only distinction being plaintiff's subjective report of concentration problems (Tr. 23, 295-96, 499), and were inconsistent with Dr. Privitera's opinion that plaintiff's cognitive impairment precluded full-time work. In addition, while Dr. Privitera reported that plaintiff had become "incapacitated" in 2003 (Tr. 321), his treatment notes show plaintiff was gainfully employed full-time in 2006 and 2008. (Tr. 295, 303). Consequently, the Court declines to find that the ALJ erred in her assessment of Dr. Privitera's opinion.

Lastly, the Court notes that with respect to both Dr. Cresci's and Dr. Privitera's opinions that plaintiff is incapable of full time employment, these opinions are not entitled to any deference. The ALJ alone is responsible for determining whether plaintiff meets the statutory definition of disability based on the medical and vocational evidence in the record. *See* 20 C.F.R. § 404.1527(d)(1). A treating physician's "broad conclusory formulations, regarding the ultimate issue which must be decided by the [Commissioner], are not determinative of whether an individual is under a disability." *Kirk v. Sec. of HHS*, 667 F.2d 524, 538 (6th Cir. 1981).

For the above reasons, the undersigned finds that the ALJ's decision to discount Dr. Privitera and Dr. Cresci's opinions is substantially supported by the record. Accordingly, the ALJ's decision should be affirmed.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **AFFIRMED** and this matter be closed on the docket of the Court.

Date: 1/8/2013

Karen L. Litkovitz
United States Magistrate Judge

15

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

ROBERT WILLIAMSON,                                        Case No. 1:11-cv-828
      Plaintiff,                                         Barrett, J.
                                                         Litkovitz, M.J.

      vs.

COMMISSIONER OF
SOCIAL SECURITY,
      Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.  This period may be extended further by the Court on

timely motion for an extension. Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.  If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs.  A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in

accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140

(1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).

16